Argued and submitted March 24,
reversed and remanded June 23, 1980

# EUGENE EDUCATION ASSOCIATION,
## *Petitioner,*
### *v.*
# EUGENE SCHOOL DISTRICT 4J, et al,
## *Respondents.*

### (No. C-65-78, CA 15836)

613 P2d 79

Henry H. Drummonds, Eugene, argued the cause for petitioner. With him on the brief were Jennifer Friesen, and Kulongoski, Heid, Durham & Drummonds, Eugene.

Bruce E. Smith, Eugene, argued the cause for respondents, Eugene School District 4J and Richard Miller. With him on the brief was Young, Horn, Cass & Scott, Eugene.

Al J. Laue, Assistant Attorney General, Salem, waived appearance for respondent, Employment Relations Board.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

**JOSEPH, P. J.**

This case arose from the Eugene Education Association's complaint to the Employment Relations Board alleging that respondents Eugene School District 4J and its designated representative (referred to collectively hereafter as the District) had refused to bargain over certain Association proposals and had thereby engaged in an unfair labor practice.

The Association's proposals, set out in the margin,[1] consisted of three successive proposals on the subject

[1] The Association's proposals concerning "summer vacations" and teacher "workdays" or "preparation days" are set out below in the order they were presented to (and repudiated by) the District.

The first bargaining proposal by the Association on "summer vacations" was:

"10.2 Work Year: ....

"10.2.3 Unpaid vacations shall be as follows:

    "a. Summer vacation shall end on August 29, 1978 ....

    "b. Summer vacation shall begin on June 7, 1979."

The second proposal was:

"10.2.3 Unpaid vacations shall be as follows:

    " ....

    "d. Summer vacation shall be at least sixty (60) days exclusive of Saturdays, Sundays, and holidays."

The third proposal was:

"10.2.3 Unpaid vacations shall be as follows:

    " ....

    "d. Summer vacation shall be at least twelve (12) continuous weeks."

The first of two Association bargaining proposals on teacher "workdays" was:

"10.2.4 Teacher workdays shall be as follows:

    " ....

    "b. One (1) inservice/orientation day at the beginning of the year before classes commence.

    "c. Two (2) workdays of preparation without students present at the beginning of the year before classes commence.

    "d. Four (4) workdays, one at the end of each grading period, without students to prepare student grades and records.

    "e. One (1) professional day as designated by the State Board of Education to attend professional conferences."

The second "workdays" proposal of the Association was:

"10.2.4 Preparation days: Employees shall be provided eight (8) preparation days.

    "a. Preparation days may be used for inservice, orientation, planning, grading and conferences.

    "b. Preparation days shall not be used for supervision or any direct or individual contact with children."

of "summer vacations" and two successive proposals on "teacher workdays" or "preparation days," all of which the District refused to discuss on the ground that all presented merely permissive subjects for collective bargaining.[2] The main issue before the Board on the Association's complaint was whether any of the Association's proposals tendered mandatory rather than permissive subjects for bargaining, thus rendering the District's refusal to bargain an unfair labor practice under ORS 243.672(1)(e).[3] The Board held that all the proposals encompassed only permissive subjects for bargaining and dismissed the complaint. The Association has petitioned for review of the Board's order. We reverse and remand.

Our disposition of the issues raised by the "summer vacation" proposals is different from that on the issues raised by the other set of proposals, and we will discuss those two facets of this case separately. We must take up first, however, an issue that is common to both — the scope of our review of the Board's determination

---

[2] Following the District's refusal to bargain on the proposals in n. 1, *supra,* the Association submitted the following proposals:

"10.2.4 The Board shall adopt a calendar *subject to the requirements of the negotiated agreement, state laws, and the State Department of Education's minimum standards.*

"a. An Association delegation and the Superintendent shall meet to discuss the School Calendar at least sixty (60) days prior to the Board's consideration of the proposed calendar.

"b. In the event of disagreement between the Association and the Superintendent, the Association may present its calendar with appropriate rational directly to the Board for consideration.

"c. If the Board rejects any of the Association's recommendations, the Chairperson of the Board shall notify the Association in writing of the reason(s) for the rejection." (Emphasis added.)

The district agreed to all of this proposal, except the emphasized language.

[3] ORS 243.672:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

" * * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative [of its employes].

" * * * * * ."

[736]

that the Association's proposals tendered permissive rather than mandatory subjects of bargaining.

An unfair labor practice proscribed by ORS 243.672(1)(e) is, so far as involved here, a public employer's refusal "to meet at reasonable times and confer in good faith with respect to employment relations," ORS 243.650(4), "employment relations" being defined at ORS 243.650(7) as "includ[ing], but not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." We held in *Springfield Ed. Assn v. Sch. Dist.,* 24 Or App 751, 758, 547 P2d 647, *opinion modified on other grounds,* 25 Or App 407, 549 P2d 1141, *rev den* (1976) (hereafter Springfield I), that the subjects specifically mentioned in the statute are mandatory bargaining subjects. The Association's "summer vacations" proposals would in general therefore appear to be mandatory subjects, because "vacations" is specifically mentioned in the statute. Nevertheless, the Board took a different view. Starting from a proposition that "a proposal involving 'vacations' is not a mandatory subject merely because vacation is a term used in the definition of employment relations," the Board proceeded to render what purported to be its expert interpretation of the term and concluded:

"The calendar period in question, labeled as a 'summer vacation' by the Association and a 'recess' by the District, is merely a break between the end of one school year and the beginning of the next. By virtue of their employment relationship, teachers' work is essentially seasonal in nature, *i.e.,* academic year to academic year. During the summer break, teachers are not required to teach or perform other services unless specifically contracted therefor and, accordingly, paid additional compensation. Teachers do not, as a general rule, teach or perform other services during the summer break period; hence, they do not earn or receive compensation for that period, notwithstanding the fact that they are paid over a

twelve-month period for a work year of shorter duration. Therefore, this Board concludes that the calendar break period, does not, in substance, comport with the meaning of 'vacation' as it is used in the definition of employment relations."

The first question thus presented in analyzing the scope of our review is whether we can review the Board's determination that the teachers' "calendar break period" is not a "vacation" under the statute. The Association and the District both rely on *Springfield Education Assn v. School Dist.,* 42 Or App 93, 600 P2d 425, *rev allowed* (1979) (hereafter Springfield III), where we said, 42 Or App at 96:

"In *McPherson [v. Employment Division,* 285 Or 541, 591 P2d 1381(1979),]* the Supreme Court noted three different types of statutory terms. If the agency has special knowledge of the meaning of certain terms, such as elements of a technical vocabulary, courts rely on such expertise in reviewing the agency's interpretation. Words or phrases which describe relationships meeting 'certain definable legal tests' may be construed by courts as readily as by agencies. A third group of terms requires 'completing a value judgment that the legislature itself has only indicated'; judicial review is limited to determining whether the agency policy is within the range so indicated. 285 Or at 549-50."

The Association contends that "vacation" is the second type of statutory term, and this "may be construed by courts as readily as by agencies." The District contends that "vacations" in the statute is of the first type described above and that, therefore, we ought to defer to the Board's expert interpretation of the term. It is apparent, however, that both parties argue backwards from the conclusion they seek to a factually awkward premise. It is not clear to us — and the Association does not explain — how "vacation" describes any relationship meeting "certain definable legal tests." Nor is it shown that the term was "drawn from a technical vocabulary which takes its meaning

from a particular science, industry, trade, or occupation in which the agency has genuine expertise," *McPherson v. Employment Division, supra,* 285 Or App at 549, which would have to be the basis for deference to the Board's interpretation of the word.

Only terms that need to be interpreted or construed are amenable to the *McPherson* classification; and while our statutes (and cases) are replete with terms that demand special meanings, the mere fact of the occurrence of a simple undefined noun in a statute does not *ipso facto* propel its meaning past ordinary powers of comprehension. Common dictionary definitions of "vacation" contain no surprises:

> "*** [A] respite or a time of respite from something ***; a scheduled period during which activity (as of a court or school) is suspended ***; a period of exemption from work granted to an employee for rest and relaxation ***; a period spent away from home or business in travel or recreation ***."

Webster's New Collegiate Dictionary 1290 (1976). *See also* Black's Law Dictionary 1717 (Rev 4th Ed 1968):

> "A recess or leave of absence, a respite or time of respite from active duty, an intermission or rest period during which activity or work is suspended. It is a period of freedom from duty, but not the end of employment. *** [adding, incidentally, the commonplace that "[i]n schools, there are customary vacations at Christmas, Easter, and during the summer."]"

The Board's characterization quoted above of the teachers' "calendar break period" does not differ materially from ordinary definitions of "vacation," except that the Board notes that teachers "do not earn or receive compensation for that period." We are not told why the Board considered that fact significant, nor can we perceive any basis for differentiating unpaid summer "calendar break periods" from, for example, unpaid leaves of absence, which the Board found "clearly within the definition of employment relations and *** hence within the scope of mandatory bargaining."

*Springfield Education Association v. Springfield School District No. 19,* 1 PECBR 347, 355 (Case No. C-278, July, 1975), *reversed on other grounds Springfield Ed. Assn. v. Sch. Dist., (Springfield I), supra; and see South Lane Education Association v. South Lane School District No. 45J,* 1 PECBR 459, 471 (Case No. C-280, Sept., 1975). We hold that the Association's second and third vacation proposals fell within the "vacation" provision of ORS 243.650(7) and are therefore mandatory bargaining subjects under *Springfield I.*

The Board pointed out, however, that in *Springfield I* we upheld its determination that the school calendar is a permissive bargaining subject and correctly noted that:

> "*** [T]he Association proposal, which specifies the beginning and ending dates of 'summer vacation' *[i.e.,* the first vacation proposal set out in n 1, *supra]* is just another way to designate the first and last teacher work days. *** The substance or essence of [that proposal] is inextricably intertwined with the comprehensive school calendar. ***"

Thus, the proposal to schedule the summer vacation, though arguably one of the "matters concerning *** vacations," ORS 243.650(7), *supra,* cannot be reconciled with our holding in *Springfield I* upholding the Board's determination that setting the school calendar lies within the District's prerogatives. That proposal was therefore only a permissive bargaining subject, which the District was entitled to refuse to discuss.

The Association contends that its proposals on teacher "workdays" are really proposals concerning "hours" and therefore, like the vacation proposals, are clearly mandatory subjects of bargaining. We disagree. The subjects of these proposals are not expressly mentioned in ORS 243.650(7), and bargaining would be mandatory only on the Board's determination that their effect on teachers' employment outweighs matters of educational policy. *Springfield I, supra,* 24 Or

App at 759; *Springfield III, supra,* 42 Or App at 95. As we noted in *Springfield III, supra,* 42 Or App at 97, concerning proposals for collective bargaining on subjects not specified in ORS 243.650(7):

> "Under *McPherson [v. Employment Division, supra]* interpretation of ORS 243.650(7) is for ERB and we are bound by ERB's interpretation unless we can say it is contrary to legislative intent."

There is no basis here for imputing to the legislature an intent that bargaining be mandatory on the workdays proposals.

The Board's order dismissing the Association's complaint is reversed, and the case is remanded to the Board for entry of an order consistent with this opinion.