Argued and submitted November 10, 1983, affirmed July 11, reconsideration denied
August 31, petition for review allowed by opinion October 30, 1984
See 298 Or 146, 689 P2d 958 (1984)
Reconsideration on attorney fees allowed by order,
council awarded attorney fees of $1,560 March 20, 1985

### EAST COUNTY BARGAINING COUNCIL,
*Petitioner - Cross-Respondent,*

*v.*

### CENTENNIAL SCHOOL DISTRICT NO. 28JT,
*Respondent - Cross-Petitioner.*

(C-185-82; CA A27416)

685 P2d 452

Henry H. Drummonds, Eugene, argued the cause for petitioner - cross-respondent. With him on the briefs were Robert D. Durham, and Kulongoski, Heid, Durham & Drummonds, Eugene.

Lester V. Smith, Jr., Portland, argued the cause for respondent - cross-petitioner. With him on the brief were Douglas S. Parker, and Bullard, Korshoj, Smith & Jernstedt, P.C., Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

East County Bargaining Council (council) is the exclusive representative under the Public Employe Collective Bargaining Act (PECBA), ORS 243.650 *et seq.*, of teachers employed by Centennial School District No. 28JT. The council appeals and the district cross-appeals from an Employment Relations Board (ERB) order sustaining some and rejecting other allegations that the district's refusal to bargain about teacher evaluation procedures and certain other matters is an unfair labor practice under ORS 243.672(1)(e).

The issue raised by the council's appeal is whether its proposals pertaining to teacher evaluations involve "employment relations" and are therefore mandatory subjects of bargaining under ORS 243.650(7), which provides:

> " 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

School district and teacher representatives have contested variations of that issue before ERB and the appellate courts repeatedly. In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), the Supreme Court concluded that ERB's balancing approach, by which it weighs the comparative effect of a proposed bargaining subject on educational policy and on teacher employment conditions, is not an erroneous interpretation of or method of determining the mandatory bargainability of a subject under ORS 243.650(7). The court also approved ERB's three-part standard for applying its balancing approach to teacher evaluation proposals. It explained:

> "ERB concluded that the *bases for* and *use of evaluation* related predominantly to educational policy, although they affect teachers' working conditions somewhat, because the bases represent the determination of programs and program standards and the use of evaluation is to determine whether these program standards are being met. The determination and measurement of program standards are management functions.
>
> "ERB also concluded that the *mechanics of evaluation* also affect working conditions, but relate primarily to educational policy because the mechanics and bases of evaluation

are 'inextricably intertwined.' The form, content, number and sequence of evaluations, and the resources allocated therefor, ERB reasoned, must be designed to correlate to the program standards and to serve as the basis for subsequent managerial action. Accordingly, both the bases for and uses of evaluation and the mechanics of evaluation were deemed not to be conditions of employment and, hence, subject to permissive rather than mandatory bargaining.

"ERB next concluded that those parts of the proposals dealing with *procedural fairness* (e.g., notice and opportunity to be heard) had no effect on the formulation and achievement of program and little effect on the allocation of resources, but greatly affected teachers' employment. Hence, procedural fairness procedures were deemed to be subject to mandatory bargaining." 290 Or at 235-37. (Emphasis in original; footnotes omitted.)

During the six-year period that the unfair labor practice complaints decided by *Springfield* were pending before ERB and the courts, ORS 342.850, the statute governing teacher evaluations, was amended. Or Laws 1979, ch 598, § 1; Or Laws 1979, ch 668, § 2a.[1] However, the court noted in

---

[1] ORS 342.850 now provides:

"(1) The district superintendent of every school district, including superintendents of education service districts, shall cause to have made at least annually but with multiple observations an evaluation of performance for each probationary teacher employed by the district and at least biennially for any other teacher. The purpose of the evaluation is to allow the teacher and the district to determine the teacher's development and growth in the teaching profession and to evaluate the performance of the teaching responsibilities. A form for teacher evaluation shall be prescribed by the State Board of Education and completed pursuant to rules adopted by the district school board.

"(2)(a) The district school board shall develop an evaluation process in consultation with school administrators and with teachers. If the district's teachers are represented by a local bargaining organization, the board shall consult with teachers belonging to and appointed by the local bargaining organization in the consultation required by this paragraph.

"(b) The district school board shall implement the evaluation process that includes:

"(A) The establishment of job descriptions and performance standards which include but are not limited to items included in the job description;

"(B) A preevaluation interview which includes but is not limited to the establishment of performance goals for the teacher, based on the job description and performance standards;

"(C) An evaluation based on written criteria which include the performance goals; and

*Springfield* that the amended statute was "not applicable to [that] contract year or [this] proceeding." 290 Or at 219, n 1. The principal question in this case is whether the amendment of ORS 342.850 affects the application of the test approved in *Springfield* for determining what evaluation-related matters are mandatory subjects of bargaining.

The most important change effected through the 1979 amendment of ORS 342.850 was the addition of the present subsection (2). The parties appear to agree that the general effect of that and the other 1979 changes was to increase the statutorily required content of and procedures for teacher evaluations and, therefore, to reduce the discretionary authority of school district boards in connection with evaluations. The parties also appear to agree that what the council presented here were "parrot proposals," *i.e.,* they were designed to incorporate the language or substance of ORS 342.850 into the collective bargaining agreement.

The council argues that, because the amendment made the statutory requirements for evaluations more specific, increased the evaluation-related rights of teachers and reduced the flexibility and discretion of school districts in

---

"(D) A post-evaluation interview in which (i) the results of the evaluation are discussed with the teacher and (ii) a written program of assistance for improvement, if needed, is established.

"(c)  Nothing in this subsection is intended to prohibit a district from consulting with any other individuals.

"(3)  Except in those districts having an average daily membership, as defined in ORS 327.006, of fewer than 200 students, the person or persons making the evaluations must hold teaching certificates. The evaluation shall be signed by the school official who supervises the teacher and by the teacher. A copy of the evaluation shall be delivered to the teacher.

"(4)  The evaluation reports shall be maintained in the personnel files of the district.

"(5)  The evaluation report shall be placed in the teacher's personnel file only after reasonable notice to the teacher.

"(6)  A teacher may make a written statement relating to any evaluation, reprimand, charge, action or any matter placed in the teacher's personnel file and such teacher's statement shall be placed in the personnel file.

"(7)  The personnel file shall be open for inspection by the teacher, the teacher's designees and the district school board and its designees. District school boards shall adopt rules governing access to personnel files, including rules specifying whom school officials may designate to inspect personnel files."

connection with evaluations, the effect was to shift the balance from the educational policy to the employment conditions end of the spectrum and to make virtually all matters pertaining to teacher evaluations mandatory bargaining subjects. The council implicitly makes the related point that, because the district *must* comply with the statute, it has *no* educational policy interests which militate against bargaining about proposals that simply duplicate the statutory requirements.

ERB disagreed with that argument and adhered to the standards that it had established before the 1979 amendment of ORS 342.850. Its order explains:

"* * * Both parties relied on the fact that the Council's proposals repeat or parallel statutory provisions in arguing their respective positions. This Board finds the statutory argument to be largely irrelevant in determining the bargainability of proposals, except where it is contended that a proposal is a prohibited subject, because we are required to apply the 'balancing test' even where a subject is addressed by statute. *Sutherlin Education Association v. Sutherlin School District,* 25 Or. App. 85 [, 548 P2d 204] (1976).

"* * * The Legislature has the power to enact legislation that extensively intrudes on management's rights but only minimally affects employes' working conditions. When ORS 342.850 mandated certain school board duties, it simultaneously created certain rights for teachers, it is true; but such newly-created rights are not automatically 'employment relations.' Any bargaining proposal must still be subjected to the balancing test—regardless of statutes other than the Public Employe Collective Bargaining Act—to determine its status as mandatory or permissive. Even where a right is established by statute it must pass the balancing test and be found to be of 'like character' to the items listed in ORS 243.650(7) before it can be deemed mandatory.

"To illustrate why the passage of ORS 342.850 did not affect the bargainability of evaluation proposals we must imagine that the parties are balanced on the seesaw with the statute in force. The Union makes a proposal that simply reiterates the statute. Such a proposal actually affects neither the school board's prerogatives nor the teaching staff's working conditions because, even if it is placed in the collective bargaining agreement, it does not change the duties and rights established by the statute. It would appear then that the 'parrot' proposal would not tip the plank either way because it

would land directly on the fulcrum, and thus it would be neither mandatory nor permissive. But the PECBA does not contemplate such 'neutral' proposals. Every lawful proposal is either mandatory or permissive. Thus, the balancing test must be applied even where statutory provisions are proposed.

"Many statutes affecting public employers and employes have been enacted, repealed or amended since 1973. The definition of 'employment relations' in ORS 243.650(7) has abided, however. The status of bargaining proposals must be measured by the provisions of the PECBA and not by other statutes."[2] (Footnote omitted.)

We agree generally with ERB. The essence of the council's argument is that, because the 1979 amendments of ORS 342.850 reduced the policy discretion of school boards over evaluation content and procedures, their necessary effect was to lessen the comparative weight of the district's educational policy interests and to increase the weight of teachers' employment interests in connection with evaluation-related subjects. The conclusion the council draws is that at least the matters which ORS 342.850 specifically controls—and over which it leaves the district no policy discretion to exercise— are perforce employment conditions and are subject to mandatory bargaining.

The weakness in the council's syllogism is that it assumes that ORS 342.850 not only affects, but affects dispositively, whether particular subjects are "conditions of employment" *for purposes of ORS 243.650(7).* The court said in *Springfield:*

"The wording of [ORS 243.650](7) indicates that the legislature chose to define 'employment relations' by example, but did not use an exhaustive list of examples. Rather, it used a general term, 'other conditions of employment,' intended to allow ERB to include other subjects of like character. The legislature expressed its policy choice by listing definitional examples. The reference to 'other' such subjects was not a delegation to ERB to make different choices; rather, it is, in effect, a direction to ERB to replicate the same choice by regarding as 'employment relations' only those subjects which

---

[2] ERB concluded that the majority of the evaluation proposals about which there was a dispute are not mandatorily bargainable, but that three are. The council's appeal is from the former determination. The district cross-appeals, *inter alia,* from the latter.

embody the same characteristics as 'monetary benefits, hours, vacations, sick leave, grievance procedures,' and no others. The question of whether any subject is like or unlike the listed matters is one of interpretation * * *." 290 Or at 233.

■ ERB correctly concluded here that the focus of its inquiry is whether the subjects proposed for bargaining are "like or unlike" those enumerated in ORS 243.650(7) and that its balancing test is a correct method for determining whether the proposed bargaining subjects are like the statutory examples. ERB also appears to have concluded that statutes outside PECBA have no bearing on whether proposed bargaining subjects come within ORS 243.650(7). *See Sutherlin Ed. Assn v. Sch. Dist.*, 25 Or App 85, 87-88, 548 P2d 204 (1976). Whether or not ERB stated the latter conclusion too broadly, we agree with the conclusion as it pertains to ORS 342.850. The 1979 amendments to that statute do not explicitly enlarge the scope of mandatorily bargainable subjects,[3] and we find nothing implicit in the statute that would have that effect; indeed, the specificity of the 1979 amendments more logically implies that as little was to be left to the collective imaginations of school board and teacher representatives as to the independent imaginations of school boards. We do not agree with the council that, if the statute subtracts from the board's pre-amendment authority over the substance and format of evaluations, it must add correspondingly to the evaluation related subjects about which teachers may and school boards must bargain. There is no direct or necessary relationship between the scope of school board authority to set policy under ORS 342.850 and the scope of mandatory bargaining under PECBA. We reject the council's assignment of error.

■ ■ The district cross-appeals. We find its first and second assignments to be without merit, and the only comment they warrant is that we reject the district's argument that the amendment to ORS 342.850 makes all evaluation related matters *prohibited* subjects of bargaining. In its

---

[3] ORS 342.850(2)(a) requires school boards to consult with school administrators and teachers about the development of the evaluation process and, if the teachers have a bargaining representative, the teacher consultation must be with "teachers belonging to and appointed by" the bargaining organization. ORS 342.850(2)(c) provides that district boards are not prohibited from consulting "any other individuals." We do not understand the consultations contemplated by ORS 342.850(2) to be related to the bargaining process under PECBA. *Compare* ORS 243.666; see also ORS 243.672(1)(i).

remaining assignment, the district contends that ERB erred by concluding that the council's proposals relating to certain vacations and to the definition of the work year for salary purposes are mandatory bargaining subjects. The district's basic argument is that those proposals affect the setting of the school calendar, which is primarily a matter of educational policy. *See Eugene Ed. Assn. v. Eugene Sch. Dist.,* 46 Or App 733, 613 P2d 79 (1980). We agree with ERB that the proposals relate primarily to employment conditions rather than to the school calendar and that they do not defeat the school board's ability unilaterally to establish the "precise boundaries of the comprehensive school calendar."

■        The district also challenges ERB's ruling that the following proposal by the council was a mandatory bargaining subject:

> "If possible, the proposed school calendar will be submitted to Council leadership for review, suggestions or recommendations at least two (2) weeks prior to final Board action to adopt the calendar. The Board welcomes suggestions but retains the power of final approval."

The district argues that "the proposal is 'inextricably intertwined' with the calendar setting process and is therefore permissive." ERB concluded:

> "Even though setting the school calendar is a matter of educational policy, the dates that are adopted have a direct effect on teachers in that they include the teachers' actual workdays. The language proposed * * * merely provides a mechanism through which the teachers' bargaining representative can be notified concerning a prospective school calendar. The language does not restrict the District's calendar-making authority in any fashion. Because the calendar is of great interest to, and has a great effect on, teachers, while [the proposal] places a minimal burden on the District in its policy-making function, we hold the language of [the proposal] to be mandatory."

We agree.

        Affirmed.