Argued and submitted December 22, 1986, affirmed August 5, reconsideration denied September 25, petition for review allowed November 3, 1987 (304 Or 311)

# PORTLAND FIREFIGHTERS ASSOCIATION, LOCAL 43, IAFF,
*Petitioner,*

*v.*

# CITY OF PORTLAND,
*Respondent.*

(UP-143-85; CA A39106)

740 P2d 228

Kathryn T. Whalen, Portland, argued the cause for petitioner. With her on the brief was Bennett, Hartman, Tauman & Reynolds, Portland.

Rudolph S. Westerband, Deputy City Attorney, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of an order of the Employment Relations Board (ERB) which held that the city of Portland (city) did not engage in an unfair labor practice by refusing to bargain collectively regarding a city initiated change in a vacation scheduling policy. At issue is the mandatory or permissive nature of the change under ORS 243.650(7). We affirm.

In January, 1985, the city and the Portland Firefighters Association (association) began negotiation for a collective bargaining agreement to succeed a contract which would expire on June 30, 1985. The parties reached agreement on all bargaining issues except vacation scheduling. The city notified the union that, effective July 1, 1986, it would limit to 24 the number of firefighters who would be allowed to take vacation on a particular day. City officials asserted reduced costs and increased departmental efficiency as reasons for the change. A policy statement accompanying the announced changes explained:

> "The new maximum limit will maintain efficient use of manpower throughout the calendar year, to meet regular manning requirements. By reducing the cycle of dramatic manpower shortages during vacation peak seasons and manpower oversupplies caused by an excess of Traveling Fire Fighters during otherwise low use periods, the Fire Bureau hopes to avoid a yearly cycle of soaring overtime costs during the peak periods and lay-offs of highly trained fire fighters during otherwise low use periods."

The association requested bargaining over the announced changes. The city refused to negotiate on grounds that vacation scheduling was a "permissive" rather than a "mandatory" topic for collective bargaining under ORS 243.650.

The association represents approximately 677 firefighters, working in 35 fire stations. Firefighters work 24 hour shifts, one day on and two days off. Employes are divided into three shifts, each comprising about 220 to 230 firefighters. Before 1986, fire bureau policy provided that the number of firefighters on vacation at any one time could not exceed one-sixth of the particular station's work force; vacation date preference was, and still is, determined on a seniority based bidding system. Vacationing firefighters are generally replaced by

floating employes, known as "travelers," who work full time on one regular shift, but are assigned to different station houses as needed. Under the previous system, sufficient travelers were often not available during peak vacation periods to replace vacationing firefighters. When that occurred, the fire bureau either paid on-duty firefighters overtime or operated fire crews at manpower levels below that required by safety concerns.

As stipulated by the parties, Portland firefighters accrued 8,004 shifts of vacation time in 1985. The new policy maximum of 24 vacation shifts per day allows a total of 8,760 vacation shifts to be taken in one year, which is all of the hours accrued in 1985 plus 22 percent (2.07 shifts) of the vacation time carried over from previous years. As of January 1, 1986, union members had accrued a total of 3,429 unexpended vacation shifts carried over from years before 1985. Because the new limitation would not allow use of all of that additional accrued vacation time in one year, the association claims that the proposed limitation amounts to a deprivation of vacation time.

A public employer that refuses to negotiate over "employment relations" as defined in ORS 243.650(7) commits an unfair labor practice. ORS 243.650(7) provides:

> " 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, *vacations,* sick leave, grievance procedures and other conditions of employment." (Emphasis supplied.)

The association argues that the new vacation policy relates to "vacations" and is, *per se,* a mandatory topic of bargaining. In addition, the association argues that the new restrictions bear more directly on "employment conditions," as the term is used in the statute, than on any management interest of their employer.

■    Specifically enumerated bargaining subjects under ORS 243.650(7) are, *per se,* subjects of mandatory bargaining. *Int'l Assoc. of Firefighters v. City of Salem,* 68 Or App 793, 684 P2d 605, *rev den* 298 Or 150 (1984); *Eugene Ed. Assn. v. Eugene Sch. Dist.,* 46 Or App 733, 613 P2d 79 (1980). However, in *Eugene Ed. Assoc. v. Eugene Sch. Dist. 4J,* 58 Or App 32, 648 P2d 56 (1982), we recognized ERB's authority to interpret statutory terms under ORS 243.650(7) and to explain

their application to particular facts. We held that a proposal does not become a mandatory subject of bargaining simply because it bears some relationship to a specifically enumerated bargaining subject and is labeled as such. Rather, the focus of the agency's inquiry is on the nature and purpose of the specific proposal or policy. Although the policy change at issue here bears some relationship to vacations, its purpose is to maintain consistent staffing levels at optimum cost. We conclude that the vacation scheduling change is properly characterized as a staffing proposal and not as a vacation proposal made a mandatory subject of bargaining under ORS 243.650(7).

We turn now to ERB's application of its balancing process to determine whether the proposal concerns "other conditions of employment." It quoted one of its earlier decisions in explaining the operation of the test:

" '[W]e must weigh the effect the actual proposal would have on some condition of employment against the effect it would have on some management right. If the effect on the condition of employment is greater than the effect on the management right, the subject matter of the proposal is the condition of employment. If the effect on the management right is greater, then the subject matter of the proposal is the management right. In the first instance, then, the proposal would be mandatory because it concerns a condition of employment; in the second it would be permissive because it concerns a management right. * * *' *IAFF Local 314 v. City of Salem,* * * * 7 PECBR at 5826."

ERB began its analysis by recognizing the unique character of fire departments, as compared with other public entities such as school districts. It noted that fire departments "cannot close down for periods of time or safely operate short-handed." In its factual findings, it also noted the financial pressures faced by the fire bureau and its "legitimate concern with reducing vacation replacement overtime costs." ERB concluded:

"The City has an extensive interest in protecting the public safety by utilizing fire suppression personnel in the most efficient manner. So long as the system of scheduling vacations established by the City does not unreasonably impinge on the employes' ability to use accrued leave (a situation we do not find to be the case here), a bargaining proposal seeking to

establish the scheduling system—that is, one which seeks to mandate the number of employes who may be on vacation at one time—affects management's right to staff and assign to a greater extent than it does employment conditions and therefore is permissive."

■ Our function on review is to uphold the reasoned application of correctly interpreted law to particular factual circumstances. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 235, 621 P2d 547 (1980). ERB has adequately explained the reasoning behind its determination, and that reasoning "rationally relates the decision to the interpretive criteria which, in turn, express the meaning of the statute." 290 Or at 239.

■ Finally, the association contends that ERB's determination that the new vacation policy affects management's rights to a greater extent than the employment relations of firefighters is not supported by substantial evidence. Underlying this claim of error is the association's position that the vacation limits amount to a deprivation of already accrued vacation time. As already noted, ERB specifically found that the city's scheduling changes did not unreasonably impinge on employes' ability to use their accrued leave. ERB's findings in this respect are supported by substantial evidence. As stipulated by the parties, the new vacation policy allows for use of all vacation time earned by each employe in a given year plus 22 percent of the vacation time accrued in past years.[1] Although all of the accrued carryover time could not be

---

[1] The parties stipulated:

"1. During calendar year 1985 Fire Personnel of the City of Portland effected [*sic*] by the vacation slot limit will accrue *8,004.25* shifts of vacation.

"2. *21.93* vacation shifts are needed/day to allow Fire employes full use of *8,004.25* shifts.

"3. On January 1, 1986, the effected [*sic*] Fire employes will have *3,428.94* shifts of vacation carried over from years prior to 1985.

"4. An additional *9.39* vacation shifts are needed/day to allow Fire Employes full use of *3,428.94* carry-over shifts.

"5. The City's proposed limit of 24 vacation shifts/day makes *8760* vacation shifts available/year.

"6. The City's proposed limit of 24 vacation shifts per day would allow effected [*sic*] employes to schedule 100% (21.93 shifts/day) of their vacation accrued in 1985 and 22% (2.07 shifts/day) of vacation carried over from prior years."

expended in one year, there appears to be sufficient flexibility under the new restrictions to allow for enjoyment of all previously accrued carryover vacation time in succeeding years. No carryover vacation time will be lost as a result of the new system.

Affirmed.