Argued and submitted December 1, 1987, Court of Appeals and Employment Relations
Board reversed and remanded to board for further proceedings March 15, 1988

# PORTLAND FIRE FIGHTERS ASSOCIATION,
## Local 43, IAFF,
*Petitioner on Review,*

*v.*

# CITY OF PORTLAND,
*Respondent on Review.*

## (ERB UP-143-85; CA A39106; SC S34427)

751 P2d 770

Kathryn T. Whalen, Bennett, Hartman, Tauman & Reynolds, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Rudolph S. Westerband, Deputy City Attorney, Portland, argued the cause and filed the response for respondent on review.

James W. Kasameyer, Carney, Buckley, Kasameyer & Hays, Portland, filed an *amici curiae* brief on behalf of International Association of Fire Fighters, Local 1660, and Oregon Nurses Association.

Will Aitchison, Aitchison & Moore, Portland, filed an *amici curiae* brief on behalf of Coos Bay Police Association, Eugene Police Employees Association, Keizer Police Association, Klamath County Peace Officers Association, Oregon City Police Employees Association, Oregon State Police Officers Association, Redmond Police Officers Association and Springfield Police Association.

Henry H. Drummonds and Monica A. Smith, Kulongoski, Durham, Drummonds & Colombo, Portland, filed an *amici curiae* brief on behalf of Oregon AFL-CIO and Oregon Education Association.

LENT, J.

**LENT, J.**

Neither a public employer nor its employees' exclusive representative may refuse the other's request to bargain collectively "with respect to employment relations." ORS 243.650(4), 243.672(1)(e), 243.672(2)(b).[1] The issue presented is whether a public employer's limit on the number of fire fighters who may be on vacation at the same time is an "employment relation" and therefore a matter over which the employer may not refuse to bargain. The Employment Relations Board (ERB) concluded that the limit was not an "employment relation" and, on judicial review, the Court of Appeals affirmed. *Portland Firefighters Assoc. v. City of Portland,* 86 Or App 662, 740 P2d 228 (1987). We allowed review to consider whether the ERB has erroneously interpreted the definition of "employment relations" in ORS 243.650(7). Because we hold that it has, we reverse and remand to the ERB for further proceedings.

## I.

Petitioner Portland Fire Fighters Association (PFFA) is the collective bargaining representative for fire

---

[1] ORS 243.672(1)(e) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive [employee] representative."

ORS 243.672(2)(b) provides:

"(2) It is an unfair labor practice for a public employe or for a labor organization or its designated representative to do any of the following:

"* * * * *

"(b) Refuse to bargain collectively in good faith with the public employer if the labor organization is an exclusive representative."

"Collective bargaining" is defined by ORS 243.650(4):

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession."

The Employment Relations Board is authorized to investigate and to adjudicate unfair labor practice complaints. ORS 243.676. Among the actions that it can take upon a finding of an unfair labor practice are ordering the offending party to "cease and desist from the unfair labor practice" and "such affirmative action * * * as necessary to effectuate the purposes of * * * ORS 243.650 to 243.782." ORS 243.676(2).

fighters in the Portland Fire Bureau. In 1985, during negotiations for a new collective bargaining agreement between the PFFA and respondent City of Portland, the City announced that it would limit to 24 the number of fire fighters who were permitted to be on vacation at any given time. The limit under the then existing collective bargaining agreement, one-sixth of the members of each engine house company, permitted substantially more fire fighters to be on vacation at the same time. The purpose of the new limit was to reduce costs associated with labor force fluctuations caused by the seasonal use of vacation leave.

In order to protect its members' ability to take vacations at times they most preferred, the PFFA proposed retaining the existing collective bargaining agreement's limit in the new agreement, but the City refused to bargain over the proposal. The City maintained that the proposal did not concern "employment relations" and was therefore a "permissive" rather than a "mandatory" matter for bargaining. The PFFA then filed with the ERB an unfair labor practice complaint based on the City's refusal to bargain.

The ERB agreed with the City's position and dismissed the PFFA's complaint. In a written opinion accompanying its dismissal, the ERB acknowledged that the "subject of 'vacations' is mandatory for bargaining" under the definition of "employment relations" in ORS 243.650(7). ORS 243.650(7) provides:

> " 'Employment relations' includes, but is not limited to, *matters concerning* direct or indirect monetary benefits, hours, *vacations,* sick leave, grievance procedures and other conditions of employment." (Emphasis added.)

The ERB observed, however, that "a union may put forth a proposal in negotiations that ostensibly concerns a mandatory subject but that in reality is an attempt to force bargaining over a permissive matter." In order to decide whether a particular proposal concerns a "mandatory" or "permissive" matter, the ERB has employed the following "balancing test":

> "[W]e must weigh the effect the actual proposal would have on some condition of employment against the effect it would have on some management right. If the effect on the condition of employment is greater than the effect on the management right, the subject matter of the proposal is the condition of

employment. If the effect on the management right is greater, then the subject matter of the proposal is the management right. In the first instance, then, the proposal would be mandatory because it concerns a condition of employment; in the second it would be permissive because it concerns a management right."

The weight assigned to a proposal's effects on "conditions of employment" and "management rights" has depended upon the industry in which the proposal was made. Thus a proposal held to concern a "mandatory" matter in one industry might be held to concern a "permissive" matter if made in another.

With respect to the PFFA's proposal, the ERB justified its conclusion that the proposal concerned a "permissive" matter for bargaining by emphasizing that fire departments must operate continuously with full crews.

"The City has an extensive interest in protecting the public safety by utilizing fire suppression personnel in the most efficient manner. So long as the system of scheduling vacations established by the City does not unreasonably impinge on the employes' ability to use accrued leave (a situation we do not find to be the case here),[2] a bargaining proposal seeking to establish the scheduling system—that is, one which seeks to mandate the number of employes who may be on vacation at one time—affects management's right to staff and assign to a greater extent than it does employment conditions and therefore is permissive."

On judicial review, the Court of Appeals affirmed:

"Our function on review is to uphold the reasoned application of correctly interpreted law to particular factual circumstances. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 235, 621 P2d 547 (1980). ERB has adequately explained the reasoning behind its determination, and that reasoning 'rationally relates the decision to the interpretive criteria which, in turn, express the meaning of the statute.' 290 Or at 239."

86 Or App at 667.

Although the Court of Appeals discussed the ERB's

---

[2] The City's vacation limit of 24 fire fighters at a time would have allowed fire fighters to use in the current year all of the leave that they had accrued in the current year plus, as of 1985, 22 percent of the leave that they had accrued but not used in previous years.

application of its "balancing test," the Court of Appeals did not explain why it thought that the "interpretive criteria" implicit in that "balancing test" "express[ed] the meaning of" ORS 243.650(7). We now turn to that issue, which, phrased somewhat more simply, is whether the ERB's decision is consistent with the statutory definition of "employment relations."[3]

## II.

In reviewing agency orders in contested cases, a court may set aside or modify the order or remand the case to the agency if the court, among other things, "finds that the agency has erroneously interpreted a provision of law." ORS 183.482(8)(a). This court has previously discussed the interpretation of ORS 243.650(7) in *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). At issue in *Springfield* was whether proposals regarding employer evaluations of teachers were matters addressed to "employment relations." The ERB had divided the proposals into three categories: those concerned with the "bases for and use of evaluations," those concerned with the "mechanics" of evaluations and those concerned with the "fairness" of evaluations. The ERB, using a "balancing test" similar to that used in this case, had concluded that only those proposals concerned with the "fairness" of evaluations were matters on which the school district could not refuse to bargain. The other proposals had been deemed "permissive" matters for bargaining because the ERB had determined that their "dominant effect [was] to restrict educational policy." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 234.

Because evaluations of teachers did not fall within any of the enumerated subjects of ORS 243.650(7), "direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures," this court considered whether the evaluations fell within the catchall language, "matters concerning * * * other conditions of employment."

"The wording of [ORS 243.650(7)] indicates that the legislature chose to define 'employment relations' by example. * * *

---

[3] The PFFA also argues that the ERB's decision is "not supported by substantial evidence." Even assuming the relevance of this argument, we need not reach it in light of our decision.

> The reference to 'other' such subjects was not a delegation to ERB to make different choices; rather, it is, in effect, a direction to ERB to replicate the same choice by regarding as 'employment relations' only those subjects which embody the same characteristics as 'monetary benefits, hours, vacations, sick leave, grievance procedures,' and no others."

*Id.* at 233. After emphasizing that "the question on review is whether the agency interpretation is erroneous, not whether the court would have expressed the interpretation differently," the court upheld the ERB's interpretation. *Id.* at 234. The interpretation was "not erroneous" because only those proposals addressed to the fairness of evaluations were addressed to matters having "characteristics similar to the statutory examples of 'monetary benefits, hours, vacations, sick leave' and, particularly, 'grievance procedures.' " *Id.*

■ The number of fire fighters who may be on vacation at the same time differs from teacher evaluation policies in that "matters concerning * * * vacations" are explicitly identified in ORS 243.650(7) as subjects for collective bargaining. Of course, like proposals on teacher evaluations, proposals on explicitly identified matters such as vacations affect the interests of both employers and employees. A proposal by fire fighters for a wage increase or to limit the number of hours they must work per shift will affect a public employer's interest in adequately staffing its fire suppression crews and, depending upon the size of the wage increase or the limit on hours, could be said to affect the interests of the employer more than the interests of the employees. The ERB recognized in this case that, had the City's limitation on vacations been more severe, the PFFA's proposal might have had a greater effect on fire fighters than on the City and would have therefore been deemed a "mandatory" subject for bargaining. But by explicitly identifying subjects in ORS 243.650(7), the Legislative Assembly has made "matters concerning" those subjects matters for "mandatory" collective bargaining, regardless of the relative effect on the interests involved. The "balancing test" upheld in *Springfield* was meant to interpret the term "other conditions of employment" under the Legislative Assembly's direction to the ERB "to replicate the [Legislative Assembly's] choice by regarding as 'employment relations' only those subjects which embody the same characteristics as 'monetary benefits, hours, vacations, sick leave,

grievance procedures,' and no others." 290 Or at 233. There is no need for replication, however, where the Legislative Assembly has already determined that a specific subject is a matter for collective bargaining.

The ERB's application of its "balancing test" to the enumerated subjects of ORS 243.650(7) reveals a misconception of the Legislative Assembly's purpose in enacting collective bargaining legislation for public employers and employees. That purpose, stated at length in ORS 243.656, is to channel labor disputes into negotiation and mediation and thereby avoid the impairment and interruption of public services caused by strikes, lockouts and other forms of economic warfare.[4] If negotiation and mediation are to be effective means of resolving labor disputes, the scope of the definition of those matters subject to mandatory negotiation and mediation must be broad enough to encompass all matters over which labor disputes are likely to arise. ORS 243.650(7) is worded very broadly, including not only "matters concerning * * * other conditions of employment," but also a caution that

---

[4] ORS 243.656 states:

"The Legislative Assembly finds and declares that:

"(1) The people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employes;

"(2) * * * [F]ull acceptance of the principle and procedure of collective negotiation between public employers and public employe organizations can alleviate various forms of strife and unrest. Experience in the private and public sectors of our economy has proved that unresolved disputes in the public service are injurious to the public, the governmental agencies, and public employes;

"(3) Experience in private and public employment has also proved that protection by law of the right of employes to organize and negotiate collectively safeguards employes and the public from injury, impairment and interruptions of necessary services, and removes certain recognized sources of strife and unrest, by encouraging practices fundamental to the peaceful adjustment of disputes arising out of differences as to wages, hours, terms and other working conditions, * * *;

"(4) The state has a basic obligation to protect the public by attempting to assure the orderly and uninterrupted operations and functions of government; and

"(5) It is the purpose of ORS 243.650 to 243.782 to obligate public employers, public employes and their representatives to enter into collective negotiations with willingness to resolve grievances and disputes relating to employment relations and to enter into written and signed contracts evidencing agreements resulting from such negotiations."

*See also City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 276-77, 639 P2d 90 (1981).

the definition of "employment relations" is not limited to conditions of employment.[5]

> " 'Employment relations' includes, *but is not limited to,* matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." (Emphasis added.)

■     The difficulty with the ERB's "balancing test," at least with respect to matters concerning subjects enumerated in ORS 243.650(7), is that the test allows a public employer to refuse to bargain over a matter so long as the ERB deems the matter to be of greater importance to the employer than to its employees. As a consequence, public employers do not have to bargain over many matters that, although deemed to be of greater importance to employers, are indubitably of great importance to employees.[6] This case is an example. A limit on the number of employees who may be on vacation at the same time necessarily limits the ability of at least some employees to choose when they will take their vacation leave. If an employee's demand for vacation leave is strongly seasonal, as it apparently is for many members of the PFFA, the inability to take vacation leave at preferred times substantially reduces the value of that leave. Whether fire fighters will be able to be with their families during major holidays or will be able to take vacations during the summer months when their children are out of school cannot be said to be insignificant matters to fire fighters, no matter how important the City's vacation policy is to its mission to protect the public safety and the public fisc. Any effort by the City to limit the ability of fire fighters to take vacations at preferred times will be resisted by fire fighters and will lead to disputes, as it has in this case. By holding that the City need not bargain over the PFFA's proposal, the ERB has frustrated the Legislative Assembly's intention that labor disputes be resolved through negotiation.

---

[5] Academic commentators have also concluded that the definition of "employment relations" in ORS 243.650(7) should be read broadly. Brodie, *Public Sector Collective Bargaining in Oregon,* 54 Or L Rev 337, 351-52 (1975); Grodin & Hardin, *Public Employee Bargaining in Oregon,* 51 Or L Rev 7, 14, 21 (1971).

[6] That an employer or a union must bargain over a matter does not mean that the employer or union must yield or compromise its position on the matter. ORS 243.650(4). The parties must only discuss their differences in a good faith effort to resolve them.

Of course, a proposal that purports to concern "vacations" or some other subject enumerated in ORS 243.650(7) may be a sham proposal. Labeling a proposal a "vacations proposal" does not make it one. There was no determination by the ERB, however, that the PFFA's proposal was a sham. The ERB acknowledged the effect of the City's vacation limit on the ability of fire fighters to take vacations but concluded that the effect was not sufficient to outweigh the City's interest in imposing the limit.[7]

In conclusion, the ERB erred in applying its "balancing test" to a proposal concerning a matter enumerated in ORS 243.650(7). The PFFA's proposal was a "matter concerning * * * vacations" and, accordingly, the City was obligated to bargain collectively and in good faith with the PFFA over the proposal.

The decisions of the Court of Appeals and of the Employment Relations Board are reversed, and this case is remanded to the Employment Relations Board for further proceedings consistent with this opinion.

---

[7] The Court of Appeals characterized the City's vacation limit as a "staffing proposal."

"Although the policy change at issue here bears some relationship to vacations, its purpose is to maintain consistent staffing levels at optimum cost. We conclude that the vacation scheduling change is properly characterized as a staffing proposal and not as a vacation proposal made a mandatory subject of bargaining under ORS 243.650(7)."

86 Or App at 666. To label the City's "proposal" a "staffing proposal" is to do nothing more than to describe the vacation limit from the point of view of the City rather than the PFFA. *Any* proposal concerning vacations can be described as a "staffing proposal." If the City had announced that it was eliminating vacations entirely, it would be just as easy to say that the purpose of the elimination was "to maintain consistent staffing levels at optimum cost" and that therefore the elimination of vacations was not a "matter concerning * * * vacations."