Argued and submitted October 26, 1990, affirmed March 20, reconsideration denied
June 5, petition for review allowed August 6, 1991 (312 Or 16)

# TUALATIN VALLEY BARGAINING COUNCIL,
*Respondent,*

*v.*

# TIGARD SCHOOL DISTRICT 23J,
*Petitioner.*

## (UP-42-89; CA A62432)

808 P2d 101

William H. Walters, Portland, argued the cause for petitioner. With him on the brief were Donna M. Cameron and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Paul B. Gamson, Portland, argued the cause for respondent. With him on the brief was Bennett & Durham, Portland.

Gene Mechanic and Goldberg & Mechanic, Portland, filed an *amicus curiae* brief for Oregon Federation of Teachers, AFT, AFL-CIO.

Paul Snider, Salem, and Sandra Arp, Salem, filed an *amicus curiae* brief for Association of Oregon Counties and League of Oregon Cities, respectively.

William G. Paulus and Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem, filed an *amicus curiae* brief for Oregon Community College Association.

Before Buttler, Presiding Judge, and Rossman and Edmonds, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Tigard Education Association (Union)[1] is the exclusive bargaining representative under the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 *et seq,* for teachers employed by Tigard School District 23J (District). During negotiations for a new collective bargaining agreement, among Union's proposals was one entitled "Workload," which specified grade-by-grade class size limits.[2] District refused to bargain, contending that class size is not a mandatory subject of bargaining. Union filed a charge with the Employment Relations Board (ERB), alleging that District's refusal to bargain over the proposal was an unfair labor

---

[1] When the original agreement was signed, Union was named Tualatin Valley Bargaining Council.

[2]

"ARTICLE 14

*"WORKING* CONDITIONS

"A.  Work Load

"The District agrees to strive to make every reasonable effort to limit the number of students per classroom as dictated by the financial condition of the District, the building facilities available and special program needs as recommended by the District's administrative staff.

"*1. Individual employee workloads shall not exceed the following standards:*

*a. Kindergarten - 20 students per class.*

*b. Grades 1, 2, 3 and 3-4 splits - 24 students per class.*

*c. Grades 4, 5 and 6 - 26 students per class.*

*d. Grades 7, 8, and 9 - 28 students per class.*

*e. Grades 10, 11 and 12 - 28 students per class.*

*f. Special Education:*

*(1). Learning Disabled - 30 student caseload.*

*(2). Seriously Emotionally Disabled - 10 student caseload.*

*(3). Educable Mentally Retarded - 10 student caseload.*

"*2. Each Talented and Gifted, mainstreamed learning disabled and/or handicapped student and each English as a Second Language student shall be counted as two (2) students for the purpose of workload computation.*

"*3. Workloads for each elementary specialist shall not exceed four hundred (400) students.*

"B.  Working Conditions

"The District and the Association agree to work together to promote safe working conditions. The number of students enrolled in classes in which hazardous materials or equipment is used: e.g. science, industrial arts, etc., shall not exceed the number of student stations in the classroom as prescribed by safety precautions that are jointly determined by the teacher and the building administrator." (Emphasis in original.)

practice under ORS 243.672(1)(e). ERB held, contrary to one of its earlier decisions, that the proposal to limit the number of students assigned to each teacher addresses a matter that relates to and significantly affects a teacher's workload and, therefore, is a mandatory subject of bargaining on which District must bargain in good faith. District appeals, and we affirm.

Both a union and an employer must, at the other's request, bargain collectively "with respect to employment relations." ORS 243.650(4); ORS 243.672(1); ORS 243.672(2)(b). The question is what subjects are matters concerning "employment relations" as defined in ORS 243.650(7):

> " 'Employment relations' includes, but is not limited to, *matters concerning* direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and *other conditions of employment.*" (Emphasis supplied.)

Because neither the subject of workload nor a proposal for class size is specifically identified in the statute, the question becomes whether either is an "other condition of employment."

In *Springfield Education Assn. v. School Dist.,* 290 Or 217, 233, 621 P2d 547 (1980), the court said:

> "The wording of [ORS 243.650(7)] indicates that the legislature chose to define 'employment relations' by example[.] * * * The reference to 'other' such subjects was not a delegation to ERB to make different choices; rather, it is, in effect, a direction to ERB to replicate the same choice by regarding as 'employment relations' only those subjects which embody the same characteristics as 'monetary benefits, hours, vacations, sick leave, grievance procedures,' and no others."

The question of whether any subject is like or unlike the listed matters is "one of interpretation, not of discretion." 290 Or at 233.

District contends[3] that ERB erroneously interpreted ORS 243.650(7), requiring reversal. ORS 183.482(8)(a). Whether it erred depends on the meaning of *Springfield* and *Portland Fire Fighters Assoc. v. City of Portland,* 305 Or 275,

---

[3] We have combined and reordered District's assignments for ease of discussion.

751 P2d 770 (1988). In attempting to carry out *Springfield's* mandate that "other conditions of employment" must embody the "same characteristics" as "monetary benefits, hours, vacations, sick leave [and] grievance procedures," ERB considered each of those subjects to determine what characteristics they had in common and concluded that each was a generic term that was generally applicable to all public employees. That is consistent with *Springfield's* mandate that other subjects be of like kind.

That interpretation is also consistent with the court's analysis in *Portland Fire Fighters,* where the city had refused to bargain over the union's proposal responding to the city's announcement that it would limit the number of fire fighters who were permitted to be on vacation at any given time. ERB had applied a "balancing test," resulting in its concluding that the terms of the *proposal* would have less effect on conditions of employment than they would have on management rights; therefore, it did not concern a condition of employment and was not a mandatory subject of collective bargaining. We affirmed. *Portland Firefighters Assoc. v. City of Portland,* 86 Or App 662, 740 P2d 228 (1987). In reversing, the Supreme Court pointed out that the *subject* of the proposal related to vacations, which is specifically identified in the statute as a matter concerning "employment relations" and was, therefore, a subject for mandatory bargaining, unless the union's proposal was a sham. Because ERB had not found it to be a sham, the city was required to bargain on the proposal. There was no occasion for ERB to apply a "balancing test."

The balancing test that ERB has used to determine what subjects with the same characteristics as those identified in the statute are "other conditions of employment" is set out in *IAFF Local 314 v. City of Salem,* Case No. C-61-83, 7 PECBR 5819, 5825 (1983):

> "Where a *subject generally* has a greater effect on working conditions than on management's rights, that subject is a condition of employment and is mandatory. Where a *subject generally* has a greater effect on management's rights than on working conditions, that subject is not a condition of employment and is permissive." (Emphasis in original.)

That application of the balancing test was approved generally

in *Springfield Education Assn. v. School Dist., supra.*[4] ERB, however, has incorrectly applied that balancing test to determine whether *proposals* are mandatory or permissive. In *Portland Fire Fighters Assoc.,* the court pointed out that balancing was appropriate only in determining whether a *subject* was an "other condition of employment." 305 Or at 282.

■     Once ERB has concluded, after applying the balancing test, that an unenumerated subject is an "other condition of employment" within the meaning of ORS 243.650(7), no further balancing is appropriate, because that subject must be treated the same as an enumerated subject and is, therefore, one for mandatory bargaining.[5] Workload has been determined by ERB, by use of the balancing test, to be an "other condition of employment" and, thus, a subject for mandatory bargaining. *OPEU v. State of Oregon,* Case No. UP-64-87, 10 PECBR 51, 79 (1987).

■     Because the subject of Union's proposal here purports to be workload, the question is whether characterizing the proposal that way is a sham. Merely characterizing a proposal as workload does not make workload the subject of the proposal. *See Portland Fire Fighters Assoc. v. City of Portland, supra,* 305 Or at 284. ERB found that the terms of the proposal, in fact, relate to workload. ERB put the question this way:

> "The appropriate inquiry is whether the proposal addresses a matter concerning a condition of employment; i.e., does the number of students assigned to a teacher significantly affect that teacher's workload?"

■     As we understand *Portland Fire Fighters,* the question is whether a proposal *relates* to a subject requiring bargaining, not whether it "significantly affects" that subject,

---

[4] We note that, in *Portland Fire Fighters Assoc. v. City of Portland, supra,* 305 Or at 283, the court said:

"ORS 243.650(7) is worded very broadly, including not only 'matters concerning * * * other conditions of employment,' but also a caution that the definition of 'employment relations' is not limited to conditions of employment."

[5] ERB has held that "[a]ll [mandatory] subjects—whether expressed in the statute or found through case law to be conditions of employment—are equally mandatory for bargaining, for the legislative policy inherent in ORS 243.650(7) * * * is to require good faith bargaining over all 'employment relations[.]' " *IAFF v. City of Salem,* Case No. C-61-83, 7 PECBR 5819, 5825 (1983).

which ERB posed as the question. Substantial evidence supports ERB's finding that the proposal significantly affects workload; *a fortiori,* it relates to workload. Before negotiations, Union had conducted a survey of District's teachers that showed that class size was the single most critical factor in determining workload. It determines the number of parent-teacher conferences, the number of papers to be graded and the hours spent on assistance to individual students, all of which relate to workload. There was also testimony to support the survey's findings.

■ District also contends that ERB failed to give an adequate explanation for rejecting its earlier holding that class size was not a mandatory subject of bargaining. *Springfield Educ. Assn. v. Springfield School Dist.,* Case No. C-278, 1 PECBR 347, 358 (1975). ERB has held that it "will not re-apply the balancing test to previously-adjudicated bargaining subjects unless [it is] presented with a compelling reason to do so." *OPEU v. State of Oregon,* 10 PECBR at 69. That is merely an application of ORS 183.482(8)(a)(B).

Actually, ERB did not re-apply the balancing test in this case to conclude, contrary to its precedent, that class size relates to a mandatory subject of bargaining. It concluded, rather, that its earlier decision was incorrect, given its understanding of the Supreme Court's decisions in *Springfield* and *Portland Fire Fighters,* requiring a different interpretation of the statute: Only subjects of general applicability to public employees may fall within the statutory phrase "other conditions of employment." The balancing test is only appropriate to determine whether a subject should be considered an "other condition of employment." ERB pointed out that class size, as such, is not of general applicability to public employees; therefore, it could not be a *subject* requiring bargaining. ERB concluded that its earlier analysis was wrong, because it had failed to determine whether the class size proposal *related to a subject* that is an "other condition of employment." Its use of the balancing test was therefore skewed. ERB's explanation of its refusal to follow its decision in *Springfield Educ. Assn. v. Springfield School Dist., supra,* is sufficient. It explained, we believe correctly, why it changed its previous analysis.

Additionally, District contends that ERB's interpretation of ORS 243.650(7) is inconsistent with legislative

policy. In *Portland Fire Fighters,* the court stated the legislative policy underlying ORS 243.650(7):

"If negotiation and mediation are to be effective means of resolving labor disputes, the scope of the definition of those matters subject to mandatory negotiation and mediation must be broad enough to encompass all matters over which labor disputes are likely to arise." 305 Or at 283.

Not only is ERB's interpretation consistent with the policy of channelling potential disputes into the bargaining process, it is also consistent with the analysis of the statute employed by the Supreme Court in *Portland Fire Fighters* and *Springfield.*

Finally, District argues that ERB erred in stating that *Portland Fire Fighters* compels the result that it reached. As indicated, we believe that that decision, combined with *Springfield Education Assn. v. School Dist., supra,* requires the interpretation of ORS 243.650(7) that ERB followed.

Affirmed.