Argued and submitted November 4, 1991, decision of the Court of Appeals and order
of the Employment Relations Board are reversed, case is remanded to the
Employment Relations Board September 24, 1992

# TUALATIN VALLEY
# BARGAINING COUNCIL,
*Respondent on Review,*

*v.*

# TIGARD SCHOOL DISTRICT 23J,
*Petitioner on Review.*

# (ERB UP-42-89; CA A62432; SC S38109)

840 P2d 657

William H. Walters, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause and filed the petition for petitioner on review.

Paul B. Gamson, of Bennett & Durham, Portland, argued the cause for respondent on review.

William G. Paulus, of Garrett, Seideman, Hemann, Robertson, Paulus, Jennings & Comstock, P.C., Salem, filed a brief on behalf of *amicus curiae* Oregon Community College Association.

Paul Snider, Association of Oregon Counties, and Sandra Arp, League of Oregon Cities, Salem, filed an *amici curiae* brief.

Donald C. Jeffery, Portland School District 1J, Portland, filed an *amicus curiae* brief.

Nancy J. Hungerford, of Bischof, Hungerford & Witty, Oregon City, filed a brief on behalf of *amicus curiae* Bend Administrative School District 1.

E. Andrew Jordan, of Bolliger, Hampton & Tarlow, Portland, filed a brief on behalf of *amicus curiae* Special Districts Association of Oregon.

C. Akin Blitz, of Lane Powell Spears Lubersky, Portland, filed a brief on behalf of *amici curiae* Oregon State Sheriffs' Association; Oregon Association Chiefs of Police; National Public Employer Labor Relations Association; Oregon Public Employer Labor Relations Association; and the City of Tigard.

Susan Dobrof and Gene Mechanic, of Goldberg & Mechanic, Portland, filed a brief on behalf of *amicus curiae* Oregon Federation of Teachers, Education and Health Professionals, AFT, AFL-CIO.

Kathryn T. Whalen, of Bennett & Durham, Portland, filed a brief on behalf of *amici curiae* Oregon AFL-CIO; Oregon State Fire Fighters Association; Portland Fire Fighters Association, Local 43 IAFF; International Association of Theater and Stage Employees, Local 28; Multnomah County Corrections Officers Association; and American Federation of State, County and Municipal Employees, Council 75.

William B. Aitchison, of Aitchison, Hoag, Vick & Tarantino, Portland, filed a brief on behalf of *amici curiae* Multnomah County Deputy Sheriffs Association; Oregon State Police Officers Association; Federation of Parole and Probations Officers; Eugene Police Employees Association; Washington County Dispatchers' Association; Springfield Police Officer's Association; Polk County Deputy Sheriff's Association; and Portland Police Association.

PETERSON, J.

Van Hoomissen, J., filed a dissenting opinion in which Fadeley and Unis, JJ., joined.

## PETERSON, J.

■     Oregon's public employee bargaining laws require public employers and public employees' unions to bargain in good faith on the following subjects: monetary benefits, vacations, sick leave, hours, grievance procedures, and "other conditions of employment." ORS 243.650(4) and (7). Bargaining on other proposals is not mandatory. The failure to bargain in good faith on any of the mandatory subjects is an unfair labor practice. ORS 243.672(1)(e) and (2)(b). The Employment Relations Board (ERB) held that, because a teachers' union class-size proposal affects a teacher's workload, the proposal concerned an "other condition[] of employment," and that the public employer committed an unfair labor practice in refusing to bargain concerning the proposal. *Tualatin Valley Bargaining v. Tigard School Dist.*, 11 PECBR 590 (1989). The precise issue before us is whether ERB misinterpreted the statute defining "employment relations," ORS 243.650(7), by treating workload as if it were the same as the five enumerated items in that statute.

In 1989, Tigard Education Association (Teachers),[1] a bargaining representative for public employees, made a proposal to limit the number of students per classroom.[2]

---

[1] Tigard Education Association formerly was named Tualatin Valley Bargaining Council.

[2] The proposal was to amend an existing agreement (new language proposed by Teachers is italicized) as follows:

"ARTICLE 14

"*WORKING* CONDITIONS

"A. Work Load

"The District agrees to strive to make every reasonable effort to limit the number of students per classroom as dictated by the financial condition of the District, the building facilities available and special program needs as recommended by the District's administrative staff.

"*1. Individual employee workloads shall not exceed the following standards:*

    *a. Kindergarten — 20 students per class.*

    *b. Grades 1, 2, 3 and 3-4 splits — 24 students per class.*

    *c. Grades 4, 5 and 6 — 25 students per class.*

    *d. Grades 7, 8, and 9 — 28 students per class.*

    *e. Grades 10, 11 and 12 — 28 students per class.*

    *f. Special Education:*

        *(1). Learning Disabled — 30 student caseload.*

Tigard School District 23J (District), a public employer, refused to bargain on that issue, asserting that class size is not a mandatory subject of bargaining. Teachers filed an unfair labor practice charge with ERB. ERB upheld Teachers' claim and ordered District to bargain in good faith on the class-size proposal. District appealed to the Court of Appeals, which affirmed ERB's decision. *Tualatin Valley Bargaining v. Tigard School Dist.*, 106 Or App 381, 808 P2d 101 (1991). We allowed District's petition for review.

The obligation of a public employer to bargain collectively with its employees is set forth in ORS 243.672(1)(e):

> "It is an unfair labor practice for a public employer or its designated representative to do any of the following:
>
> "* * * * *
>
> "(e) Refuse to bargain collectively in good faith with the exclusive representative."[3]

"Collective bargaining" is defined in ORS 243.650(4):

> " 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to *employment relations*, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession." (Emphasis added.)

"Employment relations" — about which a public employer and the employees' designated representative must bargain in good faith — is defined in ORS 243.650(7):

---

*(2). Seriously Emotionally Disabled — 10 student caseload.*

*(3). Educable Mentally Retarded — 10 student caseload.*

"2. *Each Talented and Gifted, mainstreamed learning disabled and/or handicapped student and each English as a Second Language student shall be counted as two (2) students for the purpose of workload computation.*

"3. *Workloads for each elementary specialist shall not exceed four hundred (400) students.*"

---

[3] It is also an unfair labor practice for a labor organization's designated representative to "[r]efuse to bargain collectively in good faith with [a] public employer." ORS 243.672(2)(b).

" *'Employment relations' includes*, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and *other conditions of employment*." (Emphasis added.)

Each party claims that *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), supports its position. *Springfield* involved a dispute between three teachers' organizations and three school districts. The complaints charged that the school districts committed unfair labor practices by refusing to bargain concerning several proposals on teacher evaluations. The threshold issue concerned the meaning of "other conditions of employment," as used in ORS 243.650(7). The opinion stated:

"The wording of subsection (7) indicates that the legislature chose to define 'employment relations' by example, but did not use an exhaustive list of examples. Rather, it used a general term, 'other conditions of employment,' intended to allow ERB to include other subjects of like character. The legislature expressed its policy choice by listing definitional examples. The reference to 'other' such subjects was not a delegation to ERB to make different choices; rather, it is, in effect, a direction to ERB to replicate the same choice by regarding as 'employment relations' only those subjects which embody the same characteristics as 'monetary benefits, hours, vacations, sick leave, grievance procedures,' and no others. The question of whether any subject is like or unlike the listed matters is one of interpretation, not of discretion. The legislature expressed its meaning fully. Thus, despite the appearance of the term in the context of a broad regulatory scheme, we conclude that the statutory terms 'employment relations' and 'conditions of employment' were intended to charge ERB with interpretative rather than legislative responsibility." 290 Or at 233.

In deciding whether teacher evaluations were an "other condition of employment," ERB had adopted a balancing test in which it weighed the impact of a bargaining proposal on management prerogatives against the effect of the proposal on employment conditions of the affected employees.[4] Concerning the ERB balancing test, the *Springfield* court stated:

---

[4] ERB still utilizes a "balancing test." The ERB order in the case at bar described the balancing test in this way:

"This Board employs a 'balancing test' to help fulfill that interpretative responsibility:

"Here, ERB's formulation of interpretive criteria is an accurate expression of the statutory meaning in that it correctly explains the statute without modifying its meaning. ERB deems those aspects of the evaluation proposals which have a greater impact on employment conditions and a lesser effect on 'educational policy' to be conditions of employment. That interpretation is not erroneous because those aspects have characteristics similar to the statutory examples of 'monetary benefits, hours, vacation, sick leave' and, particularly, 'grievance procedures,' ORS 243.650(7). Conversely, ERB deems those subjects whose dominant effect is to restrict educational policy (i.e., management prerogatives or proprietary functions as in the private sector) not to be conditions of employment. ERB's interpretation correctly explains the statute and does not change it. Hence, we conclude that it is not an erroneous interpretation and we uphold it." 290 Or at 234.

The court approved ERB's balancing approach, made one minor modification to the order, and otherwise upheld ERB's application of the balancing test to the facts involved in that case. *Id.* at 236, 239.

In the present case, ERB also relied on another decision of this court, *Portland Fire Fighters Assoc. v. City of Portland*, 305 Or 275, 751 P2d 770 (1988). That case involved ORS 243.650(7). However, it did not involve the phrase "other conditions of employment"; it involved "vacations," which are listed expressly in the statute. ERB had applied the balancing test described in *Springfield* to the employer's vacation policy. It found that a vacation policy unilaterally implemented by management, but about which the fire fighters wished to bargain, affected "management's right to staff and assign to a greater extent than it does employment conditions." Therefore, ERB held that the employer was not

---

"* * * We determine the mandatory or permissive status of a particular *subject* by employing the "balancing test," in which we weigh the element of inherent management right involved concerning the subject against the effect that the subject has on a worker's employment. *Sutherlin Education Association v. Sutherlin School District*, 25 Or App 85 (1976). Where a *subject generally* has a greater effect on working conditions than on management's rights, that subject is a condition of employment and is mandatory. Where a *subject generally* has a greater effect on management's rights than on working conditions, that subject is not a condition of employment and is permissive.' *IAFF Local 314 v. City of Salem*, Case No. C-61-83, 7 PECBR 5819, 5825 (1983), emphasis in original."

required to bargain concerning its new vacation policy. On judicial review, the Court of Appeals affirmed. *Portland Fire Fighters Assoc. v. City of Portland*, 86 Or App 662, 740 P2d 228 (1987).

This court reversed the Court of Appeals and ERB. Concerning ORS 243.650(7), the *Portland Fire Fighters* opinion first quoted the *Springfield* holding set forth above at page 279 of this opinion. *Portland Fire Fighters Assoc. v. City of Portland, supra*, 305 Or at 281-82 (quoting *Springfield*, 290 Or at 233). Noting the difference between the five enumerated conditions of employment and "other conditions of employment" referred to in ORS 243.650(7), the *Portland Fire Fighters* court held that ERB erred in applying the balancing test to the subject of vacations, an enumerated subject:

> "The 'balancing test' upheld in *Springfield* was meant to interpret the term 'other conditions of employment' under the Legislative Assembly's direction to the ERB 'to replicate the [Legislative Assembly's] choice by regarding as "employment relations" only those subjects which embody the same characteristics as "monetary benefits, hours, vacations, sick leave, grievance procedures," and no others.' 290 Or at 233. There is no need for replication, however, where the Legislative Assembly has already determined that a specific subject is a matter for collective bargaining.

> "The ERB's application of its 'balancing test' to the enumerated subjects of ORS 243.650(7) reveals a misconception of the Legislative Assembly's purpose in enacting collective bargaining legislation for public employer and employees. * * *

> "* * * The difficulty with the ERB's 'balancing test,' at least with respect to matters concerning subjects enumerated in ORS 243.650(7), is that the test allows a public employer to refuse to bargain over a matter so long as the ERB deems the matter to be of greater importance to the employer than to its employees. As a consequence, public employers do not have to bargain over many matters that, although deemed to be of greater importance to employers, are indubitably of great importance to employees. * * * By holding that the City need not bargain over the PFFA's proposal, the ERB has frustrated the Legislative Assembly's intention that labor disputes be resolved through negotiation.

"Of course, a proposal that purports to concern 'vacations' or some other subject enumerated in ORS 243.650(7) may be a sham proposal. Labeling a proposal a 'vacations proposal' does not make it one. There was no determination by the ERB, however, that the PFFA's proposal was a sham. * * *

"In conclusion, the ERB erred in applying its 'balancing test' to a proposal concerning a matter enumerated in ORS 243.650(7). The PFFA's proposal was a 'matter concerning * * * vacations' and, accordingly, the City was obligated to bargain collectively and in good faith with the PFFA over the proposal." *Id.* at 282-85 (footnotes omitted).

We turn to the question whether ERB properly concluded that Teachers' proposal to limit class size concerned an "other condition of employment." Because ERB in part based its decision in the case at bar on a decision that it made in 1987, that decision deserves examination. *OPEU v. State of Oregon*, 10 PECBR 51 (1987), involved a number of bargaining proposals, including proposals concerning "transfer within a bargaining unit," "overtime," "standards for hiring," "permissive promotions," and "workload." ERB applied its balancing test to some of the proposals. ERB noted that its prior decisions concerning "workload" were "seemingly inconsistent." *Id.* at 76. It then applied the balancing test to the "workload" proposal there involved and stated:

"We hold that the topic of 'workload' is of like character to monetary benefits, hours, vacations, sick leave and grievance procedures, and that it therefore is a 'condition of employment' concerning which bargaining is mandatory. * * * On balance, 'workload' as a general subject affects working conditions more than it affects inherent management prerogatives." *Id.* at 79.

However, in an appendix to its opinion, ERB stated with respect to "class size":

"We expressly do not overrule prior determinations that 'class size,' as a general topic, is permissive and not mandatory for bargaining." *Id.* at 90.[5]

Elsewhere in its *OPEU* opinion, ERB stated that its practice is to "not re-apply the balancing test to previously-

---

[5] Note 8, *post*, quotes other paragraphs from the appendix to the *OPEU* opinion.

adjudicated bargaining subjects unless we are presented with a compelling reason to do so." *Id.* at 69. We gather that, since 1987, ERB has treated every proposal concerning workload the same as a proposal concerning any of the five subjects listed in ORS 243.650(7). Under this approach, ERB no longer applies the balancing process described in *Springfield* to any proposal that concerns workload. ERB first determines whether a proposal concerns workload. ERB then treats proposals concerning "workload" as if "workload" were a sixth enumerated subject in the statute and follows the procedures required by *Portland Fire Fighters* as to the five listed subjects. ERB applies the rule that any proposal that concerns workload is a mandatory subject of bargaining, irrespective of management prerogatives.[6]

In the case at bar, ERB held that, because "class size" concerns workload — "[t]he number of pupils assigned [affects] the amount of work required of a teacher" — Teachers' proposal concerned an "other condition of employment" and was, therefore, subject to mandatory bargaining. *Tualatin Valley Bargaining v. Tigard School Dist., supra,* 11 PECBR at 603. Reversing its earlier decisions on class size, ERB reasoned:

1. Teachers' proposal, although it concerns class size, "is written in terms of workload for teachers." *Id.* at 602.

2. Workload, as a general subject, is a condition of employment, which is mandatory for bargaining.

3. Therefore, District was required to bargain on the class-size proposal.

ERB also set forth one further requirement that must be met in order for any proposal to concern an "other condition of employment." Its order states:

"The [five] terms used in [ORS 243.650(7)] are of general application to all public employes, regardless of their occupations or their employers. In order to be of 'like character' to

---

[6] Concerning Teachers' proposal at issue here, the ERB order states:

"A proposal that truly addresses a matter concerning a condition of employment must be bargained over, even if the particular proposal arguably might have a greater impact on some management prerogative."

those terms, a subject that, through interpretation, we add to the list as a condition of employment also must be of general application to public employes. A narrow topic that affects only a special class of employe simply does not 'embody the same characteristics' as those universally-applicable terms used by the legislature." *Id.* at 601.

ORS 183.482(8)(a)(B) provides that, "[i]f the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall * * * [r]emand the case to the agency for further action under a correct interpretation of the provision of law."

■ ERB has erred in its interpretation of ORS 243.650(7) in two ways. First, under ERB's approach, a proposal that is not of general application to all public employees cannot be a condition of employment, however great its impact on the workers in the particular workplace involved, unless it falls within a larger "subject" recognized by ERB as one that is of general application to all employees. In determining whether any given proposal concerns "other conditions of employment," ERB must look to the specific facts concerning the proposal under consideration and to its effect on working conditions in the workplace that is the subject of the proposal. ERB's interpretation of ORS 243.650(7) therefore incorrectly *restricted* the scope of the legislature's intended meaning of the term "employment relations."

■ ERB's second interpretive error concerns its practice, as stated in *OPEU*, that it does "not re-apply the balancing test to previously-adjudicated bargaining subjects unless we are presented with a compelling reason to do so." 10 PECBR at 69. In the case at bar, consistent with that policy, and consistent with its *OPEU* holding concerning workload proposals — but notwithstanding its statement in *OPEU* that " 'class size,' as a general topic, is permissive and not mandatory for bargaining," *id.* at 90; see *ante* at page 282 — it determined that, because Teachers' class-size proposal concerned workload, the proposal at hand was bargainable.

■ ORS 243.766(3) requires ERB to "[c]onduct proceedings on complaints of unfair labor practices * * * and take such actions with respect thereto as it deems necessary and

proper." ERB's power to make substantive rules of law thus is limited to its authority to create and rely on precedent in analyzing individual cases.[7] Respecting ORS 243.650(7), ERB has interpretive responsibility, not legislative responsibility. *Springfield, supra,* 290 Or at 234. Although ERB can rely on its precedents that involve similar facts, it must decide each case on the facts there involved.

■      In *OPEU*, ERB incorrectly interpreted the statute defining "employment relations," ORS 243.650(7), by elevating an unenumerated subject, workload, to the status of an enumerated item and then applying that interpretation to a set of facts. ERB erred in this case by applying *OPEU* as it did. It is impermissible for ERB to "enact" general and all-inclusive declarations as to what are "other conditions of employment" and to say, respecting all proposals that concern the subject of such declarations, that any such proposal necessarily does or does not concern an other condition of employment. In this respect, ERB further "erroneously interpreted a provision of law," ORS 183.482(8)(a), by *expanding* the meaning of ORS 243.650(7).

The source of ERB's error may have been this passage in *Springfield*:

> "An interpretation of a statute is essentially an explanation of how the statute applies in a particular situation *or type of situation*. Explanation, by its nature, can usually be phrased in more than one correct way. Ordinarily, it is the initial responsibility of the agency, *whether by rule or order*, to explain the application of the statute to specific facts." 290 Or at 233-34 (emphasis added).

The last sentence in that quotation is a generic description of administrative law and was not specific to ERB. ERB may have misread this court's statement in *Springfield* as suggesting that ERB has what amounts to rule-making power with respect to ORS 243.650(7), to supplement for all time the list of subjects that must be bargained under ORS 243.650(7). *See generally Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985) (where agency has the option

---

[7] ERB has the power to "establish procedures" relative to disputes and elections, ORS 243.766(1) and (2), and to "[a]dopt rules relative to the exercise of its powers and authority," ORS 243.766(7). That is not legislative authorization to promulgate substantive rules.

to promulgate rules or issue orders, legislature may have envisioned that interpretations of law by orders in contested cases would provide an alternative to interpretations by rules).

To determine whether a given proposal concerns a condition of employment, the bargaining proposal must be considered in light of the workplace involved and the effect of the proposal on the employees working therein. We express no opinion on whether the class-size proposal involved in this case concerns a condition of employment.[8] That is for ERB to decide, in the first instance, on remand, considering the proposal's effect on working conditions in the workplace that is the subject of the proposal.

In sum, ERB erred by misinterpreting ORS 243.650(7) to provide that a workload proposal was to be treated the same as the five enumerated items in that statute, in the absence of a compelling reason not to do so in a particular case, and by applying that incorrect interpretation of the statute in this case. In determining whether a proposal is an "employment relation" for which mandatory bargaining is required, ERB must consider the individual factual circumstances presented by each case under ORS 243.650(7), unless the case involves a proposal that concerns one of the five enumerated categories in ORS 243.650(7). We therefore

---

[8] On that question, courts have reached different results. Some say it is; some say it is not. *See* Ritter, *The Duty to Bargain Under Education Labor Relations Act*, 17 Urb Law 571, 587-92 (1985).

In its *OPEU* decision, 10 PECBR at 90-91, ERB made these observations concerning class size:

"The issue of class size as a bargaining subject has been extensively litigated.

"It has been held to be permissive in Kansas, *NEA-Topeka v. USD 501*, 101 LRRM 2611 (Kan. Sup. Ct., 1979); Maine, *Biddeford v. Biddeford Teachers Assn.*, 83 LRRM 2098 (Me. Sup. Ct., 1973); Nebraska, *Seward Educ. Assn. v. School Dist.*, 80 LRRM 3393 (Neb. Sup. Ct., 1972); New Jersey, *Dunnellen Bd. of Educ. v. Dunnellen Educ. Assn.*, 85 LRRM 2131 (NJ Sup. Ct., 1973); New York, *Teachers Assn. v. Helsby*, 87 LRRM 2618 (NY App. Ct., 1974); Pennsylvania, *Labor Relations Board v. State College Dist.*, 83 LRRM 3079 (Pa. Com. Ct., 1973); and South Dakota, *Aberdeen Educ. Assn. v. Board of Educ.*, 85 LRRM 2801 (SD Sup. Ct., 1974).

"It has been held to be mandatory in Connecticut, *West Hartford Educ. Assn. v. DeCourey*, 80 LRRM 2423 (Conn. Sup. Ct., 1972); Massachusetts, *Boston Teachers Union v. School Committee*, 93 LRRM 2205 (Mass. Sup. Jud. Ct., 1976); and Nevada, *Clark County School District v. Board*, 88 LRRM 2774 (Nev. Sup. Ct., 1974)."

remand this case to ERB to decide, in a manner consistent with this opinion, whether the proposal set forth in note 2, *ante*, concerned a condition of employment.

The decision of the Court of Appeals and the order of the Employment Relations Board are reversed. The case is remanded to the Employment Relations Board.

**VAN HOOMISSEN, J.,** dissenting.

This case is about workload. Workload has been treated by the Employment Relations Board (ERB), the administrative agency that is responsible for the collective bargaining law, ORS 243.650 *et seq*, as being an "other condition * * * of employment," which is a subject for mandatory bargaining.[1] ERB held that Tigard Education Association's (Teachers) proposal to limit the number of students in classrooms and the number of handicapped and exceptionally gifted students assigned to individual teachers is a "workload" issue and, derivatively, an "other condition * * * of employment" about which Tigard School District 23J (District),[2] must bargain collectively. The Court of Appeals

---

[1] ORS 243.650 provides in part:

"As used in ORS 243.650 to 243.782, unless the context requires otherwise:

"* * * * *

"(4) 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession.

"* * * * *

"(7) 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

[2] The District's refusal to bargain on the proposal, thus, was an unfair labor practice. ORS 243.672 provides in part:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative."

The effect of a proposal on an employer does not affect its status as mandatory if, in fact, it addresses a matter concerning "other conditions of employment." *Portland Fire Fighters Assoc. v. City of Portland*, 305 Or 275, 284, 751 P2d 770 (1988).

affirmed. *Tualatin Valley Bargaining v. Tigard School Dist.*, 106 Or App 381, 808 P2d 101 (1991).

I would hold that ERB correctly applied the principles set forth in *Springfield Education Assoc. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), and *Portland Fire Fighters Assoc. v. City of Portland*, 305 Or 275, 751 P2d 770 (1988). There is substantial evidence in the record to support ERB's finding that Teachers' proposal relates to workload. I also agree with ERB's legal conclusion that workload is a "condition * * * of employment" under ORS 243.650(7). Accordingly, I would affirm ERB's order.

ERB concluded:

"[Teachers] presented ample evidence for [ERB] to conclude that class size is one appropriate measure of workload for teachers. Each student assigned to a teacher requires a certain amount of work by that teacher beyond group instruction; for example, in such areas as grading of tests and other papers, preparation of materials, parent-teacher conferences and individual assistance. The number of pupils assigned, then, does affect the amount of work required of a teacher in a defined period — *e.g.*, a day, a week or a term. Under [ERB's] holding in *OPEU v. State of Oregon*, [10 PECBR 51 (1987)], therefore, a proposal to set limits on the number of students assigned to teachers addresses a matter concerning workload and must be bargained about in good faith."

That conclusion is supported by substantial evidence and must be affirmed.

In reaching its conclusion in this case, ERB interpreted[3] ORS 243.650(7) to include workload as being a matter of "like character" to the specifically enumerated subjects in the statute. 290 Or at 233. ERB's legal conclusion was:

"Workload * * * is of general application to all public employes, just as are the [other five] subjects listed in [ORS 243.650(7)]. The measures of workload, of course, may vary from group to group of employes; but so may the measures of a legislatively-specified subject such as monetary benefits;

---

[3] The question whether any subject is like or unlike the matters listed in ORS 243.650(7) is "one of interpretation, not of discretion." *Springfield Education Assoc. v. School Dist.*, 290 Or 217, 233, 621 P2d 547 (1980).

*e.g.*, hourly wage, piece-work rate, monthly salary, or — in the case of school teachers — yearly salary."

ERB's choice was not a different choice from the legislative policy; it was a replication of the same choice "by regarding as 'employment relations' [a subject] which embod[ies] the same characteristics as 'monetary benefits, hours, vacation, sick leave, [and] grievance procedures[.]' " 290 Or at 233. ERB's interpretation of law was permissible, and we must affirm it. ORS 183.482(8)(a).

The majority reads what ERB did as having been done on a categorical, rather than a case-specific, basis. The majority concludes that ERB erred in its interpretation of ORS 243.650(7) and holds that it is now for ERB to decide whether Teachers' class size proposal concerns a condition of employment, "considering the proposal's effect on working conditions in the workplace that is the subject of the proposal." 314 Or at 286.[4] ERB is directed to "consider the individual factual circumstances presented" by this case. *Id.* at 286. ERB already has done that.

In this case, ERB first looked at the subject of Teachers' proposal, *i.e.*, workload. ERB found that workload is a mandatory subject of bargaining. ERB next looked at Teachers' specific proposal and to its effect on working conditions in the workplace that is the subject of the proposal, *i.e.*, District's schools. ERB concluded that, because class size affects a teacher's workload, Teachers' proposal concerns an "other condition * * * of employment." In its analysis, ERB decided this case *on its own facts*. I read what ERB did as being case-specific.

The legislative policy behind ORS 243.650 is to direct potential labor disputes into the negotiations process. ERB's order to bargain the issue of class size furthers this legislative policy. ERB's order does not dictate an outcome. ORS 243.650(4). It simply requires the parties to "confer in good faith" about the proposal. *Id.* If the subject of the proposal is appropriate for mandatory bargaining as it is here, the merits and wisdom of the proposal must be left to the parties. ERB's

---

[4] District does not argue that ERB made an inaccurate factual determination as to whether Teachers' class size proposal related to workload or that the proposal was "a sham." *Portland Fire Fighters Assoc. v. City of Portland, supra*, 305 Or at 285.

interpretation is consistent with both the policy of chan-
nelling potential disputes into the bargaining process and
with this court's analysis of ORS 243.650 in *Springfield* and
*Portland Fire Fighters*.

I respectfully dissent.

Fadeley and Unis, JJ., join in this opinion.